[Sac. No. 4921. In Bank.—August 26, 1935.]

HARRY L. ST. JOHN, Administrator, etc., Appellant, v. ADA A. ST. JOHN, Administratrix, etc., Respondent.

Jesse W. Carter and Dallas L. Barrett for Appellant.

Chenoweth & Leininger for Respondent.

PRESTON, J.—John L. St. John and his first wife, Frances, were married for some twenty years, from 1880 until her death in 1900. The second marriage of John L. St. John, to defendant Ada A. St. John, lasted for some twenty-five years, to wit: from 1906 until his death on May 17, 1932. Three sons are surviving issue of the first marriage. There was no issue of the second marriage. On June 3, 1932, proceedings were instituted for the probate of the estate of John L. St. John and also for the probate of the estate of his said first wife. This action, commenced February 1, 1933, represents an effort by Harry L. St. John, a son by said first marriage, to secure for himself and his two brothers, through the estate of their mother, certain property in defendant's posses-

sion. Plaintiff, as administrator of the mother's estate sues the second wife, as administratrix of the father's estate, and individually, asserting that all property in possession of the father at the time of his death was the separate property, with increase and transmutations thereof, of said first wife.

The complaint states two causes of action, first, to have all said property adjudged a part of and impressed with a trust for the benefit of the estate of Frances A. St. John and her heirs and, second, for possession thereof. The allegations of trust are predicated upon the theory that one who assumes possession of and deals with property of a deceased, without administration of her estate, holds such property in trust for the estate and those therein interested and, further, that John L. St. John expressly agreed to hold said property in trust.

The cause went to trial before the court without a jury and thereafter findings and judgment were entered for defendant, from which plaintiff has prosecuted this appeal. The sole question is that of sufficiency of the evidence to support the findings and judgment. A review of the entire record leaves us without the slightest doubt as to the correctness of the conclusions of the court below.

Briefly, it appears that from 1880 to 1898 Frances and John St. John and their children resided in Chico, California, where John followed his trade as carpenter and ranch laborer. During this period Frances became the separate owner, through deed of gift from her mother, of three lots in Chico, two of which she deeded to her husband shortly before her death. The third lot she sold in 1896 for $650. The record does not reveal the disposition made of this sum. Other property accumulated by the family during said period, including real estate and $1250 insurance collected in 1897 when the family residence burned, was, upon conflicting evidence, found by the court to be community property and not the separate property of the wife.

In the fall of 1898 the family moved to Shasta County, where Frances used gold coins out of a box in her possession to purchase cattle and equipment and make a $500 down payment on a 520-acre ranch, known as Bald Mountain ranch, which she and John L. St. John contracted to buy for $3,000 ($500 down and $2,500 within three years). There is nothing to identify the gold coins as part of the wife's said $650,

as part of the $1250 insurance money, or as part of other alleged separate or community assets. No further payments were made upon the ranch until May, 1903, almost three years after the death of Frances.

Following the death of his first wife, John L. St. John increased his holdings. In 1902 he acquired the Montgomery place; in 1906 the Walker property. He and defendant second wife resided on the Bald Mountain ranch until 1910 when it was leased to plaintiff and they purchased the so-called Horr ranch and made it their home. In 1912 they purchased additional real property. Finally, in 1929, John L. St. John contracted to sell the Bald Mountain ranch for $14,000, $11,000 of the purchase price being secured by trust deed. This encumbrance was not paid off and after the death of John L. St. John in 1932, the ranch was sold thereunder to defendant administratrix and thus passed into her possession.

It will be noted that the case, at least in so far as it concerns the Bald Mountain ranch, turns upon the evidence touching the character of the property possessed by Frances and John L. St. John at the time they moved from Chico to Shasta County. It is unnecessary to detail this evidence, which consists largely of testimony of the son Carl St. John and of plaintiff. They claim that their father, because of continuous poor health and physical weakness, was unable to progress in his trade and never earned more than enough to cover the bare living expenses and immediate needs of his family; indeed, that in 1887 he was adjudged insolvent and that when he left Chico in 1898 he possessed no separate money or property and that the community assets, in so far as cash was concerned, were nil. They claim that the original Shasta County purchases were made by the mother solely with the proceeds of her separate estate and that all properties subsequently acquired by the father were the fruits of this original investment by reason of his inability to contribute labor or earnings thereto. They claim that the father declared to them on numerous occasions that he would carry out his promise to their mother, and her wish, that the boys get all of her property, but for which promise she would have left a will bequeathing it to them.

Other witnesses, however, offered substantial testimony as to the business ability of John L. St. John, abundantly sufficient to support the findings to the effect that he managed and

farmed said properties and devoted to his own use the profits realized therefrom and the sale of the increase of the livestock and that during portions of the time he worked at his trade as a carpenter. Both sons, Carl and Harry, were over fifty years of age at the time this cause came to trial. They testified to transactions which occurred during their childhood, thirty or forty years before. ■ The trial court was warranted in weighing this evidence, to discard that which he could not credit. Indeed, giving all plaintiff's evidence full value, it seems too indefinite to support his claims. Moreover, it conflicts in material particulars with the documentary evidence and the testimony of defendant's witnesses. There is ample proof of the father's ability and business capacity. There is nothing whatsoever to show that the accumulations following the original Shasta County investment were other than the fruitage of his skill, management and labor performed under his direction. In short, there is ample evidence to support all of the findings of the court below. Indeed, the following statement made by that court at the close of the trial seems to properly sum up the situation:

"Taking into consideration all the evidence and giving to each part the weight I think it should have considering the time element (of over forty years in some instances) and the conduct of the various parties all these years, including the admissions of the father, which might be considered as against interest and were therefore admitted, I cannot say that I can say with conviction that the Bald Mountain property or the cattle and other property originally purchased by the St. John parents were other than community property of both father and mother. The Horr property is community property of the second Mrs. St. John and the deceased. If any trust had existed all these years something should have been done to make it certain and capable of proof. This is absent. I therefore direct findings and conclusions to be prepared to support judgment for the defendant."

The judgment is affirmed.

Curtis, J., Waste, C. J., Seawell, J., Langdon, J., and Shenk, J., concurred.